**UNITED STATES DISTRICT COURT**
**WESTERN DISTRICT OF NEW YORK**

---

**UNITED STATES OF AMERICA,**

                        **Plaintiff,**                     **09-CR-400A(Sr)**

**v.**

**DANIEL HUERTAS,**

                        **Defendant.**

---

## REPORT, RECOMMENDATION AND ORDER

This case was referred to the undersigned by the Hon. Richard J. Arcara, in accordance with 28 U.S.C. § 636(b)(1), for all pretrial matters and to hear and report upon dispositive motions. Dkt. Entry dated December 17, 2009.

## PRELIMINARY STATEMENT

The defendant, Daniel Huertas, is charged in a three-count Indictment with having violated Title 18, United States Code, Sections 922(g)(1) and 924(a)(2) (Count 1) and Title 21, United States Code, Section 841(a)(1) (Count 2). Dkt. #28. In Count 3 of the Indictment, the defendant also faces forfeiture of a firearm pursuant to Title 18, United States Code, Sections 924(d) and Title 28, United States Code, Section 2461(c). *Id*. Presently pending before this Court is the defendant's motion to suppress physical evidence. Dkt. #33. The Court notes that the defendant's omnibus motion for discovery was denied as moot on June 14, 2010. Dkt. #39.

In December 2005, law enforcement received several complaints about heroin distribution from 184 Forest Avenue, Buffalo, New York. Dkt. #37, p.1. Based on its investigation, law enforcement determined that the defendant was responsible for daily deliveries to 184 Forest Avenue and further, that a blue minivan operated by Michelle Montes transported the defendant to 184 Forest Avenue. *Id*. at pp.1-2. More specifically, the investigation revealed that every morning, a male named "Danny" and a female named "Michelle" supplied 184 Forest Avenue with heroin. Dkt. #1, ¶ 4. In addition, law enforcement learned that the individuals drove a blue Chevrolet Lumina van. *Id*. On or about January 10, 2006, law enforcement applied for and obtained warrants to search 184 Forest Avenue and 13 Dart Street (lower). Dkt. #37, p.2.

On or about January 12, 2006, as they were preparing to execute the search warrant at 184 Forest Avenue, law enforcement observed the blue minivan. Dkt. ##1 and 37. The Court notes that there is a discrepancy between the facts alleged in the Affidavit in support of the Criminal Complaint and those facts recited in the Government's Response to the Defendant's Motion. *Compare* Dkt. ##1 and 37. In the Affidavit in support of the Criminal Complaint, paragraph 6 states, "[o]n or about January 12, 2006, agents were preparing to execute the search warrant at 184 Forest Avenue, when the defendant came down the street driving the blue Chevrolet van."

---

[1] The facts herein are taken from the Criminal Complaint and the Affidavit upon which it is based (Dkt. #1) and the Government's Response to Defendant's Motion. Dkt. #37.

Dkt. #1, ¶ 6.  Moreover, paragraph 7 of the Affidavit states, "[t]he defendant recognized law enforcement personnel and jumped from the blue Chevrolet van and began to run." Dkt. #1, ¶ 7.  Whereas, in its Response to the Defendant's Motion (Dkt. #37), the government states that law enforcement observed the blue minivan being operated by Michelle Montes and a marked Buffalo police car attempted to conduct a traffic stop on the van.  Dkt. #37, p.2.  The government further states in its Response that as Montes stopped the van, law enforcement observed the defendant jump from the passenger side of the van and begin to run.  *Id*.  As will be discussed in greater detail below, whether the defendant was the driver or the passenger of the blue Chevrolet van does not alter the Fourth Amendment analysis.

During their pursuit of the defendant, law enforcement observed the defendant remove a clear plastic bag from his person and throw it on the ground.  *Id*. Thereafter, law enforcement secured the defendant and recovered a large plastic bag containing narcotics.  *Id*.  Following the defendant's arrest, law enforcement executed the search warrants issued on January 10, 2006 and recovered one shotgun.  *Id*.

The defendant was charged in a Criminal Complaint on January 12, 2006, with knowingly, intentionally and unlawfully possessing with intent to distribute cocaine base.  Dkt. #1.  Thereafter, on December 10, 2009, a Federal Grand Jury sitting in the Western District of New York returned the instant Indictment.  Dkt. #28.

## DISCUSSION AND ANALYSIS

By his motion, the defendant is seeking the suppression of any evidence "found on his person as a result of his arrest on January 12th, 2006 as there was no reasonable suspicion nor probable cause for his arrest." Dkt. #33, ¶ 37. More specifically, the defendant asserts,

> 41. On or about January 12th, 2006, Police Officers in Buffalo, N.Y, [sic] did, prior to executing a search warrant, observe the Defendant driving in a car near the premises to be searched.
>
> 42. According to the accusatory instrument, the Defendant did then flee the scene, and during that flight, discard an item which is [sic] later alleged to contain a mixture of cocaine base.
>
> 43. It is the contention of the Defendant that he discarded this item in direct response to an illegal show of force by the Buffalo Police Officers.
>
> 44. Due to this illegal show of force, the item recovered by the Buffalo Police is [sic] unlawfully obtained and therefore must be suppressed.
>
> 45. Further, it is clear from the evidence available to the Defendant that the weapon alleged to have been possessed by the Defendant in Count 1 of the indictment was obtained by police officers due to a search which occurred only after the alleged cocaine base was recovered.
>
> 46. As such, it is further alleged that the weapon alleged to have been possessed by the Defendant was obtained by the Buffalo Police Department unlawfully, and as such the weapon must be suppressed as fruit of the initial illegal seizure.

Dkt. #33, ¶¶ 41-46.

In its opposition to the instant motion to suppress, the government argues that the defendant is without standing to challenge the search on the grounds that he was a passenger in the vehicle stopped by Buffalo Police officers. Dkt. #37, p.8. Moreover, the government maintains that because the defendant abandoned the drugs during his flight from law enforcement, "the defendant was not seized within the meaning of the Fourth Amendment and therefore his motion should be denied." *Id*. Finally, in response to the defendant's claim that the firearm should be suppressed, the government states that, "the suppression of the gun should also be denied based upon the fact that agents seized the gun based upon a search warrant issued by this Court two days prior to the defendant's arrest." *Id*. at p.9.

As a threshold matter, the government's assertion that the defendant is without standing to challenge the search because he was a passenger in the vehicle stopped by the Buffalo Police officers is incorrect and contrary to well-settled United States Supreme Court precedent. Notwithstanding the government's assertion, the United States Supreme Court in *Brendlin v. California*, 551 U.S. 249 (2007), unequivocally stated,

> The law is settled that in Fourth Amendment terms a traffic stop entails a seizure of the driver 'even though the purpose of the stop is limited and the resulting detention quite brief.' And although we have not, until today, squarely answered the question whether a passenger is also seized, we have said over and over in dicta that during a traffic stop an officer seizes everyone in the vehicle, not just the driver.

* * *

We have come closest to the question here in two cases dealing with unlawful seizure of a passenger, and neither time did we indicate any distinction between driver and passenger that would affect the Fourth Amendment analysis.

* * *

The State concedes that the police had no adequate justification to pull the car over, but argues that the passenger was not seized and thus cannot claim that the evidence was tainted by an unconstitutional stop. We resolve this question by asking whether a reasonable person in [the defendant's] position when the car stopped would have believed himself free to 'terminate the encounter' between the police and himself. We think that in these circumstances any reasonable passenger would have understood the police officers to be exercising control to the point that no one in the car was free to depart without police permission.

A traffic stop necessarily curtails the travel a passenger has chosen just as much as it halts the driver, diverting both from the stream of traffic to the side of the road, and the police activity that normally amounts to intrusion on 'privacy and personal security' does not normally (and did not here) distinguish between passenger and driver.

*Brendlin v. California*, 551 U.S. 249 (2007), *citing*, *Delaware v. Prouse*, 440 U.S. 648

(1979) and *Whren v. United States*, 517 U.S. 806 (1996) (other internal citations

omitted). Thus, in sharp contrast to the government's argument that the defendant is

without standing to challenge the seizure of the narcotics, it is the view of the United

States Supreme Court and thus, the view of this Court, that the defendant here does

indeed have standing to challenge the seizure and may properly seek to suppress the

evidence obtained following the stop of the vehicle in which he was a passenger.

Although as the Court noted above, there appears to be a discrepancy as to whether

the defendant was the driver or the passenger of the vehicle when the Buffalo Police

initiated a traffic stop, following the reasoning of the United States Supreme Court in *Brendlin*, whether the defendant was the driver or the passenger is irrelevant for purposes of a Fourth Amendment analysis.

This Court turns now to the question of whether the defendant abandoned the drugs during flight and therefore, was not seized for purposes of a further Fourth Amendment analysis. In *California v. Hodari D.*, the Supreme Court of the United States considered whether a defendant who was being pursued by a police officer, but was not apprehended by the police officer until after he attempted to discard drugs, had been seized at the time the drugs were dropped. 499 U.S. 621 (1991). Relying upon language in *Terry v. Ohio* stating that "a seizure occurs 'when the officer, by means of physical force *or show of authority*, has in some way restrained the liberty of a citizen,'" the defendant argued that the police officer's pursuit with the emergency lights flashing constituted a show of authority sufficient to constitute a seizure. *Id.* at 625-26 (emphasis added), *quoting Terry v. Ohio*, 392 U.S. 1, 19, n.16 (1968). Noting that "neither usage nor common-law tradition makes an *attempted* seizure a seizure," the Supreme Court determined that a seizure does not occur if the subject does not yield. *Id.* at 626 & n.2. Thus, to constitute a seizure, "*either* physical force . . . *or*, where that is absent, *submission* to the assertion of authority" is required. *Id.* at 626.

In reaching its decision in *Hodari D.*, the Supreme Court recounted its decision in *Brower v. County of Inyo*, in which

-7-

> police cars with flashing lights had chased the decedent for
> 20 miles – surely an adequate 'show of authority' – but he
> did not stop until his fatal crash into a police-erected
> blockade. The issue was whether his death could be held to
> be the consequence of an unreasonable seizure in violation
> of the Fourth Amendment. We did not even consider the
> possibility that a seizure could have occurred during the
> course of the chase because, as we explained, that 'show of
> authority' did not produce his stop.

*Hodari D.*, 499 U.S. at 628, *citing Brower v. County of Inyo*, 489 U.S. 593, 596 (1989).

It is clear, therefore, "that a police pursuit in attempting to seize a person does not

amount to a 'seizure' within the meaning of the Fourth Amendment," and that

"[a]ttempted seizures of a person are beyond the scope of the Fourth Amendment."

*County of Sacramento v. Lewis*, 523 U.S. 833, 845, n.7 (1998). Following the

reasoning set forth in *Hodari D.* and in reliance on a Ninth Circuit decision, *United

States v. Santamaria-Hernandez*, 968 F.2d 980 (9th Cir. 1992), this Court has previously

found in *United States v. Swindle* (unreported decision), *aff'd*, 407 F.3d 562 (2d Cir.

2005) that where, as here, a defendant is being pursued by the police, the defendant

had not been seized when he was observed discarding, in the case of *Swindle*, a

knotted off clear sandwich bag containing crack cocaine. Here, while the defendant

was being pursued, the defendant was observed removing a plastic bag from his

person and throwing it to the ground. As in *Swindle*, this Court concludes that the

plastic bag and its contents were abandoned by the defendant while he was being

pursued by the police and was thereafter lawfully recovered by the police and should

not be suppressed.

As described above, Buffalo Police Department officers pursued the defendant and during this pursuit observed the defendant remove a plastic bag from his person and throw it on the ground. Unprovoked flight upon noticing police is pertinent in determining reasonable suspicion. *United States v. Brignoni-Ponce*, 422 U.S. 873 (1975).

> Headlong flight - wherever it occurs - is the consummate act of evasion: It is not necessarily indicative of wrongdoing, but it is certainly suggestive of such . . . . [T]he determination of reasonable suspicion must be based on commonsense judgments and inferences about human behavior.
>
> *   *   *
>
> Flight, by its very nature, is 'not going about one's business'; in fact, it is just the opposite. Allowing officers confronted with such flight to stop the fugitive and investigate further is quite consistent with the individual's right to go about his business or to stay put and remain silent in the face of police questioning.

*Illinois v. Wardlow*, 528 U.S. 119, 124-25 (2000).

The record before this Court is devoid of any facts which would give this Court any reason to depart from well-settled legal authority, including, its own prior decision in *Swindle*, *supra*. Not only does the defendant fail to offer any support for his theory of suppression or even to justify an evidentiary hearing, the facts before this Court conclusively establish that the defendant's unprovoked flight, the defendant's failure to heed the officers' assertion of authority and the observation by law enforcement of the defendant removing a plastic bag from his person and throwing it on the ground, are more than sufficient to establish reasonable suspicion to pursue the defendant. The defendant's subsequent seizure (arrest) was supported by probable

cause. In addition, because the defendant had not been "seized" at the time he discarded the plastic bag, later determined to contain narcotics, the bag and its contents were abandoned while he was being pursued and lawfully recovered by the police. Accordingly, it is recommended that the defendant's motion to suppress the plastic bag and its contents as evidence at the defendant's trial be denied.

In addition to seeking the suppression of the plastic bag and its contents, the defendant is also seeking the suppression of the firearm, namely, a Mossberg .20 gauge shotgun, Model 500 CT, bearing serial number G381448. The defendant offers little in support of his motion to suppress the firearm. Indeed, all this Court can infer from defendant's motion is that the defendant has erroneously concluded that the pursuit of the defendant and the recovery of the narcotics somehow precipitated the search which yielded the firearm. *See* Dkt. #33. Contrary to defendant's conclusion, although the execution of the search warrants took place after the defendant was arrested, law enforcement had obtained the search warrants on January 10, 2006, two days <u>before</u> the defendant was encountered and the narcotics were recovered. Thus, the defendant offers no factual or legal basis to support suppression of the firearm and therefore, this Court recommends that defendant's motion to suppress it be denied.

## CONCLUSION

Based on the foregoing, it is RECOMMENDED that defendant's motion to suppress the physical evidence (Dkt. #33) be in all respects DENIED.

It is hereby **ORDERED** pursuant to 28 U.S.C. § 636(b)(1) that:

This Report, Recommendation and Order be filed with the Clerk of the Court.

**ANY OBJECTIONS** to this Report, Recommendation and Order must be filed with the Clerk of this Court within fourteen (14) days after receipt of a copy of this Report, Recommendation and Order in accordance with the above statute, Fed.R.Crim.P. 58(g)(2) and Local Rule 58.2.

The district judge will ordinarily refuse to consider *de novo*, arguments, case law and/or evidentiary material which could have been, but were not presented to the magistrate judge in the first instance. *See, e.g., Patterson-Leitch Co., Inc. v. Massachusetts Municipal Wholesale Electric Co.*, 840 F.2d 985 (1st Cir. 1988). **Failure to file objections within the specified time or to request an extension of such time waives the right to appeal the District Judge's Order.** *Thomas v. Arn*, 474 U.S. 140 (1985); *Wesolek, et al. v. Canadair Ltd., et al.*, 838 F.2d 55 (2d Cir. 1988).

The parties are reminded that, pursuant to Rule 58.2 of the Local Rules

for the Western District of New York, "written objections shall specifically identify the

portions of the proposed findings and recommendations to which objection is made and

the basis for such objection and shall be supported by legal authority." **Failure to**

**comply with the provisions of Rule 58.2, or with the similar provisions of**

**Rule 58.2 (concerning objections to a Magistrate Judge's Report,**

**Recommendation and Order), may result in the District Judge's refusal to**

**consider the objection.**

DATED:     Buffalo, New York
           August 2, 2010


                                        *s/ H. Kenneth Schroeder, Jr.*
                                        **H. KENNETH SCHROEDER, JR.**
                                        **United States Magistrate Judge**